IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BEATRIZ JIMENEZ ET AL. | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-1066 |
| ROSENBAUM-CUNNINGHAM, INC. | : | |
| ET AL. | : | |

SURRICK, J.                                                                            MARCH __31__, 2010

### MEMORANDUM

Presently before the Court are Plaintiffs' Motion for a Default Judgment against Defendants Rosenbaum-Cunningham, Inc., Richard Rosenbaum, and Christina Flocken (Doc. No. 95); Motion of Defendant Dave & Buster's, Inc. for Default Judgment Against Defendants Richard Rosenbaum, Edward Scott Cunningham, Christina Flocken, and Rosenbaum-Cunningham, Inc. (Doc. No. 98); and Plaintiffs' Motion for a Default Judgment against Defendant Edward Cunningham (Doc. No. 99). For the following reasons, the Motions will be granted in part and denied in part.

**I.     BACKGROUND**

Plaintiffs, most of whom are immigrant workers from Mexico, are former employees of Rosenbaum-Cunningham, Inc. ("RCI"). (Am. Compl. ¶¶ 11-77, 80.) RCI provided janitorial services to theme restaurants throughout the United States. (*Id.* ¶ 79.) Richard Rosenbaum, Edward Cunningham, and Christina Flocken owned and operated RCI and actively participated in its business. (*Id.* ¶¶ 5-7.) On March 19, 2007, Plaintiffs filed a Complaint alleging that RCI paid them less than the minimum wage and failed to pay them overtime under the applicable federal and state wage and hour laws. (*See generally* Compl.; Am. Compl. ¶¶ 105, 121, 127.)

Plaintiffs also named Dave & Busters, Inc. ("D&B") as a defendant. D&B owns and operates restaurant and entertainment establishments throughout the United States. (Am. Compl. ¶¶ 88-90.) In 2004, RCI contracted with D&B to provide janitorial services at some of D&B's establishments. (*Id.* ¶ 91; Doc. No. 62 ¶ 91, at 22, ¶¶ 2-3, at 30-31.) Plaintiffs alleged that D&B was liable with the other Defendants for the underpayment to those Plaintiffs who were employed by RCI and performed janitorial work at D&B restaurants. (Am. Compl. ¶¶ 92-98, 107-14.) On June 18, 2008, Plaintiffs filed an Amended Complaint with the same factual allegations as the original Complaint. (*See* Doc. No. 61.)

Plaintiffs effected timely personal service of the Amended Complaint on RCI, Rosenbaum, Flocken, and Cunningham.[1] (*See* Doc. Nos. 63-66.) RCI filed an Answer on August 4, 2008. (Doc. No. 70.) The Answer was signed by RCI's president and was not filed by an attorney. Plaintiffs filed a motion to strike RCI's Answer on the basis that a corporate entity cannot represent itself pro se. (Doc. No. 91.) On June 10, 2009, we granted Plaintiffs' motion and RCI's Answer was stricken. (Doc. No. 92.) RCI has not filed a subsequent responsive pleading. Rosenbaum and Flocken have not filed any responsive pleadings,[2] and no attorney has entered an appearance on their behalf or on behalf of RCI.

Cunningham did not file an Answer to the Complaint. He did file an Answer to the Amended Complaint on July 31, 2009. (Doc. No. 69.) The four-paragraph Answer included no affirmative defenses or counterclaims. Plaintiffs attempted to engage in discovery with

---

[1] Service was made on Rosenbaum, Cunningham, and Flocken at a federal correctional institution where they were incarcerated. (*See* Doc. Nos. 63-64.)

[2] Flocken filed an Answer to the original Complaint on August 10, 2007, but has filed nothing since. (Doc. No. 30)

Cunningham, serving interrogatories and document requests in December of 2008 and following up with correspondence. Cunningham did not respond to the discovery requests. (*See* Doc. No. 93 at 1-2.) On June 11, 2009, Plaintiffs filed a motion seeking to compel Cunningham to respond to their discovery requests. (Doc. No. 93.) No response was filed. By Order dated June 29, 2009, we directed Cunningham to respond to Plaintiffs' discovery requests no later than July 6, 2009. (Doc. No. 96.) Cunningham has continued to ignore Plaintiffs' discovery requests and our June 29, 2009, Order. (*See* Doc. No. 99 ¶¶ 4-6.) Since filing his Answer to the Amended Complaint, Cunningham has not participated in this litigation in any manner.

D&B was timely served with the Amended Complaint and filed an Answer on July 2, 2008. (Doc. No. 62.) In its Answer, D&B asserted cross-claims against all of the co-defendants. The cross-claims allege in part that RCI breached the contract between D&B and RCI, that pursuant to the terms of that contract the cross-defendants are obligated to indemnify D&B against Plaintiffs' allegations, and that the cross-defendants are liable to D&B for contribution. (*Id.* at 30-34.) The cross-defendants have not filed any responsive pleadings or otherwise defended against D&B's cross-claims. On April 17, 2009, we approved a settlement between Plaintiffs and D&B. (Doc. No. 89.)

On January 23, 2009, D&B requested that the Clerk of Court enter a default against RCI, Rosenbaum, Flocken, and Cunningham pursuant to Rule 55(a) for failure to plead or otherwise defend against D&B's cross-claims. (Doc. No. 81.) The Clerk entered the default the same day. On June 17, 2009, Plaintiffs also asked the Clerk of Court to enter a default against RCI, Rosenbaum, and Flocken under Rule 55(a). (Doc. No. 94.) On June 18, 2009, the Clerk entered the default. Plaintiffs and D&B subsequently filed the instant Motions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 outlines a two-step process for obtaining a default judgment. *See* Fed. R. Civ. P. 55. The first step is an entry of default. *See id.* The entry of default is a ministerial task performed by the clerk. No motion is needed and no order is involved. Rather, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also Farnese v. Bagnasco*, 687 F.2d 761, 763 (3d Cir. 1982) (noting that Rule 55(a) "allows the clerk to enter a default" under the conditions stated in the Rule).

The second step is the entry of a default judgment for damages and costs. *See* Fed. R. Civ. P. 55(b). If the default judgment is properly requested and the claim is for a sum certain, the clerk will perform this step. Such situations are rare, however, and "in the vast majority of cases, a judicial determination is necessary to decide the extent of the injury or the valuation of the plaintiff's loss." *Nationwide Prop. & Cas. Ins. Co. v. Janis*, No. 08-0153, 2008 WL 2762375, at *1 (M.D. Pa. July 11, 2008) (citation omitted); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). Rule 55 therefore provides that in those cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The court should accept as true the well-pleaded factual allegations of the complaint when considering a motion for a default judgment, but it need not accept the moving party's legal conclusions or factual allegations related to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.

1990); *Tancredi v. Cooper*, No. 02-1125, 2003 WL 22213699, at *3 (E.D. Pa. Sept. 4, 2003) (noting that "all factual allegations of the complaint other than those pertaining to the amount of damages are to be taken as true" once a court determines that a defendant is in default). The court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). The decision as to whether to enter a default judgment is left to the sound discretion of the court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Nevertheless, the discretion of the district court in this area is circumscribed by the following standards.

On a motion for a default judgment against a defendant who has filed an answer or a responsive pleading but has then failed to properly participate in the litigation, a court must consider the so-called *Poulis* factors. Named for the case of *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), these factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 868; *see also Comdyne I*, 908 F.2d at 1148 (noting that the *Poulis* factors apply when a default judgment is sought as a sanction); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (noting that the Third Circuit established the *Poulis* factors for considering "punitive dismissals"). A default judgment in these circumstances effectively functions as a sanction, and the application of the *Poulis* factors affords a defendant certain protections before his "right to

proceed with or defend against a claim" is denied. *Comdyne I*, 908 F.2d at 1148; *see also Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 & n.9 (3d Cir. 1990). District courts must "make explicit factual findings concerning those factors." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 919 (3d Cir. 1992). A court may have insufficient information to evaluate all the *Poulis* factors, but that will not prevent the entry of a default judgment that is otherwise appropriate, since all *Poulis* factors need not favor the entry of a default judgment. *Hoxworth*, 980 F.2d at 919; *see also Poulis*, 747 F.2d at 868 (noting that the trial court's task is to balance the factors).

When considering whether to grant a default judgment under Rule 55(b) other than as a sanction for failing to properly participate in the litigation, courts often look to the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984), as the source of the applicable factors, and affirming a district court's refusal to enter a default judgment against a defendant who had filed a late answer); *see, e.g.*, *Barclay Transp. v. Land O'Lakes, Inc.*, No. 07-2065, 2008 WL 4491932, at *2 (M.D. Pa. Sept. 30, 2008) (citing *Farnese*, 687 F.2d at 764). Where the defendant has not entered an appearance or filed any pleadings or responsive motions, frequently the record before the court is insufficient to analyze these factors.[3] Under these circumstances, the district court

---

[3] For example, in *Carpenters Health & Welfare Fund v. Naglak Design*, No. 94-2829, 1995 WL 20848, at *1-2 (E.D. Pa. Jan. 18, 1995), the plaintiffs moved for a default judgment under Rule 55(b) in an action brought under ERISA, and the defendant neither "filed any responsive pleadings nor show[ed] cause why judgment by default should not be entered in Plaintiff's favor." The court found that it was "not in a position then to determine whether [the

6

does not have to consider the factors. *See Anchorage Assocs.*, 922 F.2d at 177 n.9 ("When a defendant fails to appear and perhaps under other circumstances covered by Rule 55, the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). Although a court certainly may, within its discretion, consider one or more of the factors, doing so is not necessary and is, in fact, an inefficient use of the court's resources.[4]

### III. DISCUSSION

With regard to Plaintiffs' motions, as a threshold matter we must determine whether the

---

defendant] has a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* at *2. As to the third factor, the court found prejudice to plaintiffs because they would suffer economic losses as a result of the defendant's failure to make the contributions required under ERISA. *Id.* In *Directv, Inc., v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006), the court found that the factors weighed in favor of a default judgment because the defendant "has not responded in any fashion to [the plaintiff's] Complaint" and "clearly has not asserted any meritorious defense to [the plaintiff's] claims." The prejudice factor also favored a default judgment because the plaintiff "has no other means of vindicating its claim against" the defendant. *Id.* In another case, a district court summarily found that a default judgment was appropriate because the "[d]efendants failed to appear, or otherwise plead, in response to the Complaint" and then "failed to respond to the instant motion, despite having been served with" it over five months earlier. *Local No. 1, Int'l Union of Elevator Constructors v. Lift-Tech Elevator Serv., LLC*, No. 08-6248, 2009 WL 2174993, at *2 (D.N.J. July 21, 2009).

[4] We note that the cases from which the three-factor test originates actually pertain to the Third Circuit's standard for considering a motion to set aside a default or a default judgment. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195 (citing *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); and *Farnese*, 687 F.2d at 764); *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (reciting factors and citing pertinent cases); *In re Subramanian*, 245 F. App'x 111, 115 (3d Cir. 2007) (non-precedential) (stating the factors and explaining why "[t]he threshold question is whether the defendant has a meritorious defense"). In that procedural setting, the defendant's participation would in most cases ensure that the court would have sufficient information to analyze the factors. Reflecting on a similar issue, the Third Circuit noted that without the benefit of a motion for reconsideration or relief from judgment, the district court "will not, in most instances, have a record that will permit it to give consideration to the *Poulis* factors . . . short of conducting a *sua sponte* investigation" of the relevant facts. *Anchorage Assocs.*, 922 F.2d at 178 (concluding that "consideration of *Poulis* type factors" on an unopposed summary judgment motion "would not be feasible").

7

Amended Complaint establishes a legitimate cause of action. *See Comcast Cable Commc'ns v. Bowers*, No. 06-1664, 2007 WL 1557510, at *2 (D.N.J. May 25, 2007) ("Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action.") (citations omitted). The Amended Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. Ann. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. Ann. § 260.1 *et seq.* The FLSA establishes a right of action by aggrieved employees to hold their employers liable "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The PMWA is the Pennsylvania counterpart to the FLSA. *See Masterson v. Fed. Express Corp.*, No. 07-2241, 2008 WL 5189342, at *3 (M.D. Pa. Dec. 10, 2008) (comparing the PMWA with the FLSA). The WPCL provides employees with a means of enforcing payment of wages and compensation withheld by an employer. *See Voracek v. Crown Castle USA, Inc.*, 907 A.2d 1105, 1109 (Pa. Super. Ct. 2006) (discussing purpose of the WPCL). In this case, the factual predicate for violations of these federal and state statutes is Defendants' alleged practice of paying Plaintiffs a weekly pay rate that corresponded to an hourly pay rate of less than the statutory minimum wage, as well as Defendants' alleged practice of refusing to pay Plaintiffs overtime and other wages. (*See* Am. Compl. ¶¶ 83-87.) Accepting Plaintiffs' factual allegations as true, Plaintiffs have stated a legitimate cause of action.

With regard to D&B's cross-claims, D&B alleges that RCI breached the Services Agreement between RCI and D&B. (*Id.* at 30-34.) According to D&B, RCI agreed to comply

with all applicable federal and state laws and "to do all the things necessary for D&B to comply" with the same. (Doc. No. 62 ¶ 4, at 31.) D&B claims that under the terms of the contract, personnel supplied by RCI were not to be considered employees or agents of D&B for any purpose. (*Id.* ¶ 3, at 30-31.) In addition, RCI would

> indemnify, hold harmless, and defend D&B . . . from and against any and all liabilities, claims, penalties, fines, forfeitures, suits, and the costs and expenses incident thereto (including costs of defense, settlement, and reasonable attorney's fees), which it hereafter may incur, become responsible for, or pay out as a result of any claims related to this Agreement and based upon the actual or alleged . . . negligent or willful acts or omissions [of RCI], including those by [RCI's] employees or agents; and . . . [RCI's] failure to comply with governmental laws and regulations.

(*Id.* ¶ 5, at 31.) Accepting the factual allegations in D&B's cross-claims as true, D&B's claims against RCI for breach of contract, and for indemnification and contribution under the contract, are legitimate causes of action. However, it is not clear that D&B has any cause of action against Rosenbaum, Flocken, and Cunningham. D&B asserted the breach of contract claim against RCI alone. (*Id.* at 32.) On their face, D&B's indemnification and contributions claims are asserted against RCI and the three individual defendants, but those claims are rooted in the contract between RCI and D&B and D&B's cross-claims do not allege sufficient facts to demonstrate that Rosenbaum, Flocken, and Cunningham may be personally liable. (*Id.* at 32-33.) Even accepting as true the factual allegations of D&B's cross-claims, D&B has not established a legitimate cause of action against Rosenbaum, Flocken, or Cunningham.

Having determined that legitimate causes of action exist, we should also ensure that we have both personal and subject matter jurisdiction before entering a default judgment. *See D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437-38 (E.D. Pa. 2006) (explaining that a prima

9

facie showing of jurisdiction suffices for this purpose). We have jurisdiction over Plaintiffs' FLSA claim under 28 U.S.C. § 1331, as it arises under a federal statute. We have supplemental jurisdiction over Plaintiffs' PMWA and WPCL claims. *See* 28 U.S.C. § 1367(a). Turning to the issue of personal jurisdiction, RCI, Rosenbaum, Flocken, and Cunningham are "employers" under the FLSA. *See* 29 U.S.C. § 203(d) (defining terms). We have personal jurisdiction over RCI, which is alleged to be incorporated in Nevada and headquartered in Florida, because it conducted business in Pennsylvania. (Am. Compl. ¶¶ 4, 91.) With regard to the individual Defendants, Cunningham and Flocken waived the defense of lack of personal jurisdiction by failing to include it in their Answers. *See* Fed. R. Civ. P. 12(h)(1).[5] As for Rosenbaum, the Amended Complaint alleges that he is a resident of Michigan but does not allege any facts concerning his contacts with Pennsylvania, other than general statements concerning his involvement in RCI's business operations. (Am. Compl. ¶¶ 5, 79-87.) That is not sufficient for us to conclude that the exercise of personal jurisdiction over Rosenbaum would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *See Crown Coal & Coke Co. v. Compass Point Res., LLC*, No. 07-1208, 2010 WL 331845, at *2-3 (W.D. Pa. Jan. 28, 2010) (discussing Pennsylvania standard for exercise of personal jurisdiction and the application of the corporate shield doctrine in that context); *see also Kojancie v. Gabriel*, No. 09-104E, 2009

---

[5] Flocken filed her Answer, which did not raise this defense, in response to the original Complaint. She has not filed any pleading or motion in response to the Amended Complaint. The filing of the Amended Complaint did not, however, revive her right to assert this defense once she failed to raise it in her first responsive pleading. *See Abady v. Macaluso*, 90 F.R.D. 690, 692 (E.D. Pa. 1981) (noting that "a party may not raise a personal jurisdictional objection to an amended complaint if she waived that objection to the initial complaint"); *see also DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 617 (D.N.J. 1990) (citing cases supporting this proposition).

WL 2385993, at *1-2 (W.D. Pa. Aug. 3, 2009) (discussing standard for exercise of personal jurisdiction by Pennsylvania courts). Therefore, we cannot exercise personal jurisdiction over Rosenbaum.

### A. Default Judgment against RCI, Rosenbaum, and Flocken in Favor of Plaintiffs

Addressing first Plaintiffs' request for a default judgment against RCI and Flocken (Doc. No. 95), we are satisfied that a default judgment against RCI and Flocken is appropriate.[6] We need not—and indeed cannot—analyze any of the default judgment factors discussed *supra*, as neither RCI nor Flocken has responded or otherwise pled despite personal service of the Amended Complaint.[7] A default was properly entered against each of them. Although RCI initially filed a pro se answer, that answer was stricken and no subsequent answer has been filed through counsel. RCI and Flocken have not communicated with the Court, requested an extension of time in which to respond, or responded to Plaintiffs' motion for a default judgment.

---

[6] Since we do not have personal jurisdiction over Rosenbaum, we undertake no analysis with regard to Plaintiffs' request for a default judgment against him.

[7] We are mindful that a default judgment "may be entered against [an] incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b). The fact that Flocken is incarcerated does not render her incompetent or excuse her from participating in these proceedings. *See, e.g.*, *United States v. 6611 S. Ingleside*, 70 F.3d 1275 (Table), No. 94-3330, 1995 WL 687658, at *4 (7th Cir. Nov. 16, 1995) (non-precedential) (rejecting "the idea that a litigant who receives adequate notice of a default judgment is excused from pursuing litigation merely because of their incarceration" (citation omitted)); *Jones v. Phipps*, 39 F.3d 158, 163-64 (7th Cir. 1994) (noting that "a jailed litigant ought to be treated neither worse, nor better, than any other party when it comes to the conduct of litigation unless some special circumstance of confinement interferes with her ability to manage legal affairs," and citing several cases where a default judgment against a prisoner was set aside because of such extraordinary circumstances). Indeed, Flocken evidenced her ability to participate in the proceedings while incarcerated by filing a pro se Answer to the original Complaint. (*See* Doc. No. 30.)

11

Under these circumstances, we find that a default judgment against RCI and Flocken is warranted pursuant to Rule 55(b)(2).

### B. Default Judgment against Cunningham in Favor of Plaintiffs

Addressing next the request for default judgment against Cunningham, unlike the other individual Defendants, Cunningham filed an Answer to the Amended Complaint. However, since that time, he has not communicated with the Court and has ignored Plaintiffs' discovery requests and our Order to respond to those requests. (Doc. No. 96.) Nevertheless, because Cunningham entered an appearance and filed a responsive pleading, we will analyze the *Poulis* factors to determine whether a default judgment against him is appropriate. As with the other Defendants, the record is silent as to the circumstances behind Cunningham's lack of participation in this litigation. Since all factors need not weigh in favor of a default judgment, we will consider the factors to the extent that there is sufficient information in the record to inform our analysis.

The first *Poulis* factor is the extent of Cunningham's personal responsibility. We conclude that this factor weighs in favor of a default judgment. Cunningham's ability to participate in the litigation is evidenced by his filing of an Answer to the Amended Complaint. As noted above, his incarceration does not provide an excuse for failing to fulfill obligations and for missing deadlines imposed by the Federal Rules of Civil Procedure and this Court. Nor does his pro se status excuse his failure to participate in the litigation. *See Smith ex rel. Ali v. Altegra Credit Co.*, No. 02-8221, 2004 WL 2399773, at *4-5 (E.D. Pa. Sept. 22, 2004) (finding that this factor weighed against a pro se litigant who did not comply with most of the scheduling orders and missed all but one scheduling conference). Cunningham has not presented any excuse for his

non-participation in the litigation and his disregard of our Orders.

The second factor concerns the prejudice to Plaintiffs caused by Cunningham's failure to meet scheduling orders and respond to discovery. It is clear that such prejudice exists here, as Cunningham's conduct—or lack thereof—continues to hinder Plaintiffs' ability to conduct discovery and adequately prepare for trial, and, ultimately, detrimentally affects their ability to vindicate their rights. *See id.* at *5. This factor weighs in favor of a default judgment.

The third factor, Cunningham's history of dilatoriness, also weighs in favor of a default judgment. As discussed above, Cunningham has ignored Plaintiffs' discovery requests and has ignored our Order concerning his discovery obligations. Cunningham's failure to respond to D&B's cross-claims, discussed *infra*, also weighs against him. *See Plumbers Union Local No. 690 v. F.P.S. Plumbing, Inc.*, No. 08-4271, 2009 WL 2591153, at *3 (E.D. Pa. Aug. 20, 2009) (noting that conduct that exceeds dilatoriness to the point of non-compliance weighs heavily in favor of a default judgment).

The fourth factor is whether Cunningham's conduct was willful or in bad faith. We do not know the motivations behind Cunningham's lack of participation in this litigation. However, the "[a]bsence of reasonable excuses may suggest that the conduct was willful or in bad faith." *Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005) (non-precedential) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003)) (noting also that "[i]n the face of court-imposed deadlines, repeated failure to observe court imposed deadlines and total failure to pursue a claim beyond the pleadings may constitute willful conduct" (citation omitted)). Cunningham's disregard of Plaintiffs' discovery requests, unexplained non-compliance with our Order of June 29, 2009, and failure to respond to D&B's cross-claims were not isolated acts but

13

part of a continuing pattern. Cunningham's conduct suggests that his failure to participate in the litigation is willful.

The fifth factor addresses the effectiveness of sanctions other than dismissal. Under the circumstances, it would appear that alternative sanctions against Cunningham are not likely to be effective. Moreover, Cunningham's failure to explain his conduct, "depriv[es] us of the ability to craft a more moderate sanction that will ensure future compliance." *See Plumbers Union*, 2009 WL 2591153, at *4. Having disregarded an order from this Court, having failed to respond to Plaintiffs' discovery requests, and having failed to plead or otherwise respond to D&B's cross-claims, it is apparent that any alternative sanctions against Cunningham would be fruitless.

The sixth and final factor is whether Cunningham has a meritorious defense. Cunningham filed a two-page Answer, consisting of four paragraphs, in response to the 128-paragraph Amended Complaint. He asserted no affirmative defenses or counterclaims. A defense is "deemed meritorious when the allegations of the pleadings, if established at trial, would . . . constitute a complete defense." *Poulis*, 747 F.2d at 869-70. Cunningham's Answer does not meet this standard.

It appears that Cunningham has abandoned his defense of this litigation. Our review of the record and analysis of the *Poulis* factors lead us to conclude that a default judgment against Cunningham is entirely appropriate.

C.   **Default Judgment against the Cross-Defendants in Favor of D&B**

Finally, addressing D&B's request for the entry of a default judgment against RCI,[8] RCI

---

[8] Having concluded that D&B has not asserted a legitimate cause of action against Rosenbaum, Cunningham, and Flocken, D&B cannot receive a default judgment against them.

was served by personal service on a corporate officer. (*See* Doc. Nos. 62, 67.) RCI has not pled or otherwise responded to D&B's cross-claims. RCI has not communicated with the Court, requested an extension of time in which to respond, or responded to D&B's motion for a default judgment. We find that a default judgment against RCI is appropriate under Rule 55(b)(2).

## IV. CONCLUSION

For these reasons, the Motions will be granted in part and denied in part, and default judgments will be entered in favor of Plaintiffs against RCI, Flocken, and Cunningham, and in favor of D&B against RCI. We reserve judgment on the issue of damages. Plaintiffs shall have sixty days in which to file a declaration and any other papers setting forth their claimed damages, and RCI, Flocken, and Cunningham shall have thirty days in which to file a response with objections to those amounts. Likewise, D&B shall have sixty days in which to file a declaration and any other papers setting forth their claimed damages, and RCI shall have thirty days in which to file a response with objections to those amounts.

An appropriate Order follows.

BY THE COURT:

R. Barclay Surrick, J.